UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| COY LEE DANIELS, JR.,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, FRANKLIN ROBBIE, D. DRAPER, HEAD OF ISP CLASSIFICATION, AND DON BUS,<br><br>Defendants. | CAUSE NO. 3:26-CV-621-JD-JEM |

OPINION AND ORDER

Coy Lee Daniels, Jr., a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Daniels alleges that he was wrongly accused of injuring inmate Donn Rupert on February 5, 2025. Following Rupert's injury, Franklin Robbie conducted an interview with Daniels where Daniels felt she was exhibiting bias against him. Camera evidence was inconclusive, but Robbie allegedly told Daniels that she would leave Daniels under investigation as long as she could and then she would charge him with aiding and

abetting. At the conclusion of the interview, Daniels asked that video of the interview be preserved for use in court, if necessary. Robbie stated she would deny him the evidence until he was off investigation, "and that would be never." ECF 1 at 11.

On February 12, 2025, a screening officer served Daniels with a disciplinary complaint, ISP-26-02-000530. The screening officer noted that Daniels must have rubbed Robbie the wrong way, as she asked that he be screened right away while other inmates waited months to be screened. On March 11, 2025, a disciplinary hearing on the charge was continued because Daniels asked for video evidence and statements from several individuals. Daniels believes that this is an excuse commonly used to postpone hearings and thereby increase the amount of time spent in administrative segregation when it is unlikely that the inmate will be found guilty.

At the end of March, the disciplinary hearing took place before Lt. Draper. Lt. Draper indicated he would be giving internal affairs all the time they needed to investigate. When Daniels asked for an explanation, Lt. Draper called Robbie to notify her of Daniels' request. Daniels was told that internal investigations never got his evidence request and they asked him to submit it again. He refused.[1]

After the hearing, Robbie and Lt. Draper allegedly delayed dismissing the charges against Daniels in retaliation for exercising his right to request evidence. By doing so, they prevented Daniels from being moved out of D cell house, where

[1] Daniels complains that Lt. Draper did not use State Form 49521 to explain why the hearing was being postponed. However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

electrical fires necessitated that electricity be turned off. The conditions in D cell house allegedly led some inmates to commit suicide. Daniels went on a hunger strike. Daniels indicates he cried for Warden Ron Neal, the head of classification, Robbie, and Lt. Draper to dismiss the charges so that he could be moved to safer housing. It is unclear how he communicated with these defendants, but he indicates his requests were ignored. Officers continued to push Daniels into dark showers and cells. After three days, Daniels broke off his hunger strike and consumed a meal in his dark cell that was served in a Styrofoam container that officers allowed bugs to walk over. On April 30, 2025, Daniels was found not guilty of the charges brought against him by Robbie.

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (emphasis in original)). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id.*

Similarly, while inmates do not generally have a liberty interest in "avoiding transfer to *discretionary* segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (emphasis added) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005), the same analysis applies with regard to duration and the harshness of the conditions. *See e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion*, 559 F.3d at 697-98 & nn.2–3 (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)).

Daniels was in administrative segregation from February 5, 2025, until he was found not guilty on April 30, 2025. Daniels does not indicate when he was released from administrative segregation, but it cannot be plausibly inferred from the complaint that he remained housed under these conditions as Daniels makes no mention of the conditions of his confinement following April 30, 2025. While Daniels was in administrative segregation less than three months, he describes harsh conditions of confinement, including electrical fires and darkness due to a total lack of electricity.

While the duration and conditions together could potentially implicate a liberty interest, Daniels can only proceed on a due process claim if he also alleges that he did not receive the process that was due. He was entitled only to meaningful review to determine whether his placement remained appropriate. *See Isby*, 856 F.3d at 527. Daniels does not allege that his placement was not periodically reviewed or that those reviews were constitutionally inadequate. He alleges only that he was being held pending a hearing on disciplinary charges. The Constitution does not guarantee Daniels an in-person hearing when being held in administrative segregation. Because Daniels has not alleged that he did not receive periodic reviews of his placement in administrative segregation that satisfied the requirements of the Due Process Clause, he cannot proceed on a due process claim against any defendant named in this action.

Daniels also alleges that Robbie and Lt. Draper were retaliating against him for exercising his right to request evidence by utilizing that request to delay his disciplinary hearing and subject him to administrative segregation for as long as possible before Daniels was found not guilty. To state a First Amendment retaliation claim, an inmate

must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citation omitted). Speech in the prison context is protected under the First Amendment as long as it "is not inconsistent with legitimate penological interests." *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). Speech that is "disruptive" or "confrontational," violates prison policies, or amounts to "backtalk" is not protected. *Whitfield v. Spiller,* 76 F.4th 698, 707-08 (7th Cir. 2023). If Daniels engaged in that type of speech, it does not trigger a First Amendment claim. At this early stage, the court will presume that Daniel's request that video evidence from his interview with Robbie be preserved is protected speech. Giving Daniels the benefit of all plausible inferences, as the court must at this stage of the case, he has stated a claim against Robbie and Lt. Draper.

Daniels is also suing Warden Neal and the head of classification[2] for failing to correct Robbie's misconduct and thereby encouraging it. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. A supervisor can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might

[2] He also included Lt. Draper here, but he is being allowed to proceed on a retaliation claim against Lt. Draper.

see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Because Daniels has not described how Warden Neal or the head of classification were personally involved in the alleged wrongdoing, he has not stated a claim against them.

Daniels also named Don Bus as a defendant, but she is not mentioned in the body of his complaint. Because he has not explained how this defendant was involved in the events he is suing about, he cannot proceed against them.[3]

Finally, Daniels seeks both a preliminary and permanent injunction against retaliation. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Daniels is being granted leave to proceed on a single claim of retaliation that occurred in the past. He was not granted leave to proceed on a claim for ongoing retaliation on the part of Robbie or Lt. Draper. Furthermore, while Daniels has stated a retaliation claim against Robbie and Lt. Draper, he has not made a strong showing on the merits and has not alleged facts suggesting that he will suffer irreparable harm in the absence of an injunction.

---

[3] Daniels may have intended to name Pam Bane as a defendant instead of Don Bus, as she is mentioned in the complaint. However, any claim against Pam Bane would fail for the same reasons that his claims against Warden Neal and the Head of ISP Classification fail.

For these reasons, the court:

(1) DENIES the request for preliminary injunction contained in the plaintiff's complaint;

(2) GRANTS Coy Lee Daniels, Jr., leave to proceed against Franklin Robbie and Lt. D. Draper in their individual capacities for compensatory and punitive damages for retaliating against Daniels for requesting video evidence and witness statements in response to the disciplinary charges brought against him by delaying the proceedings so that he was forced to remain in administrative segregation as long as possible before he was found not guilty, in violation of the First Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Ron Neal, Head of ISP Classification, and Don Bus;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Franklin Robbie and Lt. D. Draper at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Franklin Robbie and Lt. D. Draper to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-

1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 29, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT